**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| JUAN C. P., | ) No. ED CV 19-427-PLA |
| Plaintiff, | ) **MEMORANDUM OPINION AND ORDER** |
| v. | ) |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**I.**

**PROCEEDINGS**

Juan C. P.[1] ("plaintiff") filed this action on March 7, 2019, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on March 26, 2019, and March 29, 2019. Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on November 4, 2019, that addresses their positions concerning the disputed issues in the case. The

---

[1] In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and middle and last initials, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

Court has taken the Joint Submission under submission without oral argument.

**II.**

**BACKGROUND**

Plaintiff was born in 1963. [Administrative Record ("AR") at 197.] He has past relevant work experience as a cook. [Id. at 29, 64-65.]

On June 2, 2015, plaintiff protectively filed an application for a period of disability and DIB, alleging that he has been unable to work since May 26, 2014. [Id. at 19; see also id. at 197-98.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [Id. at 115-17.] A hearing was held on May 10, 2018, at which time plaintiff appeared represented by an attorney, and testified on his own behalf, with the assistance of a Spanish interpreter. [Id. at 36-73.] A vocational expert ("VE") also testified. [Id. at 63-72.] On June 1, 2018, the ALJ issued a decision concluding that plaintiff was not under a disability from May 26, 2014, the alleged onset date, through June 1, 2018, the date of the decision. [Id. at 19-31.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [Id. at 193-96.] When the Appeals Council denied plaintiff's request for review on February 6, 2019 [id. at 1-7], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

**III.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means -- and means only -- 'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Revels, 874 F.3d at 654 (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A.     THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the

second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 26, 2014, the alleged onset date.[2] [AR at 21.] At step two, the ALJ concluded that plaintiff has the severe impairments of degenerative disc disease; sprain/strains of the lumbar-sacral and cervical spine; and carpal tunnel syndrome of the bilateral hands. [Id.] At step three, the ALJ

---

[2] The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2019. [AR at 21.]

4

determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id. at 25.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform medium work as defined in 20 C.F.R. § 404.1567(c),[4] "except frequent balancing, stooping, kneeling, crouching, and crawling; frequent climbing of ramps and stairs; frequent handling and fingering; and no climbing of ladders, ropes, or scaffolds." [Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform his past relevant work as a cook. [Id. at 29.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of May 26, 2014, through June 1, 2018, the date of the decision. [Id. at 31.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) failed to properly consider significant and relevant medical evidence of record in assessing plaintiff's RFC; and (2) failed to properly consider plaintiff's subjective symptom testimony. [JS at 4.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**A.    THE ALJ'S RFC DETERMINATION**

**1.    Legal Standard**

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Soc. Sec. Ruling

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

("SSR")[5] 96-9p, 1996 WL 374184, at *1 (1996). It reflects the most a claimant can do despite his limitations. See Smolen v. Chater, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC must include an individual's functional limitations or restrictions as a result of all of his impairments -- even those that are not severe (see 20 C.F.R. § 404.1545(a)(1)-(2), (e)) -- and must assess his "work-related abilities on a function-by-function basis." SSR 96-9p, 1996 WL 374184, at *1; see also Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). An ALJ errs when he provides an incomplete RFC ignoring "significant and probative evidence." Hill v. Astrue, 698 F.3d 1153, 1161-62 (9th Cir. 2012) (further noting that the error is not harmless when an ALJ fails to discuss significant and probative evidence favorable to a claimant's position because when the RFC is incomplete, the hypothetical question presented to the VE is incomplete and, therefore, the ALJ's reliance on the VE's answers is improper)). An RFC assessment is ultimately an administrative finding reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2). However, an RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. Id. § 404.1545. A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005); Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

### 2. Dr. Bernabe's Opinion

Plaintiff argues that the ALJ erred when he gave "substantial weight" to the December 2, 2015, opinion of orthopedic consultative examiner, Vicente Bernabe, D.O., and discounted the opinions of his treating orthopedic surgeon for workers' compensation purposes, Dr. Khalid B. Ahmed. [JS at 5 (citing AR at 28, 276-81).] He notes that counsel objected at the hearing to any

---

[5] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

6

significant weight being given to Dr. Bernabe's report for two reasons: first, in light of the objective MRI evidence of plaintiff's cervical and lumbar spines, counsel stated that "there's [no] way it's realistic th[at] [plaintiff] could lift anywhere near 50 pounds"; and, second, Dr. Bernabe "had been terminated as a consultative examiner by the Defendant Administration in the past for unsupportable medical opinions." [Id. (citing AR at 40).] Defendant does not address plaintiff's assertion about Dr. Bernabe's status with the administration, and plaintiff provides no supporting evidence regarding his assertion regarding Dr. Bernabe's alleged "termination."[6] Plaintiff also argues that the ALJ improperly gave substantial weight to the opinions of the state agency medical consultants, "who simply adopted Dr. Bernabe's findings and assessment." [Id. (citing AR at 80-81, 93-94).] Plaintiff further argues that the ALJ's rejection of the opinions of plaintiff's treating and workers' compensation physician was "inappropriate, without legal authority, and simply a manipulation of the evidence by this [ALJ] in order to justify the finding of a medium [RFC] in this case." [Id. at 5-6.] He notes that because plaintiff was 54 years old at the time of the ALJ's decision, in order to deny plaintiff benefits "under the appropriate medical vocational guidelines," the ALJ must establish that plaintiff is able to perform his past work as a cook and is limited to no less than light work. [Id. at 6.]

---

[6] Courts in the Central District that have considered the claims made by other plaintiffs that the ALJ may not rely on Dr. Bernabe's opinion in light of his removal as a consultative examiner for the Administration have rejected those arguments. See, e.g., Luis C. v. Berryhill, 2019 WL 2027599 (C.D. Cal. May 8, 2019) (noting that the Court had twice previously rejected this argument and finding that plaintiff did not challenge any specific finding or conclusion drawn by Dr. Bernabe, and did "not even attempt to explain how or why the results of objective tests conducted by Dr. Bernabe and his observations of Plaintiff's abilities should be discounted based on unrelated events such as malpractice claims and his departure from DDS"); Quijada v. Berryhill, 2018 WL 4725649 (C.D. Cal. Sept. 30, 2018) (noting that the Commissioner submitted uncontradicted evidence that Dr. Bernabe's contract with the Administration was terminated in March of 2017 due to "ongoing complaints of rudeness"); McIntosh v. Berryhill, 2018 WL 3218105 (C.D. Cal. June 29, 2018) (noting that plaintiff's contentions about Dr. Bernabe were not in the record or supported by evidence); Madison v. Berryhill, 2018 WL 1010191 (C.D. Cal. Feb. 20, 2018) (evidence presented by Commissioner that Dr. Bernabe was removed due to complaints of rudeness); Anaya v. Berryhill, 2018 WL 565698 (C.D. Cal. Jan. 24, 2018) (specifically finding this argument "distasteful and disingenuous" in light of the fact that Dr. Bernabe's license is current and in good standing (as it still is), and because plaintiff did not even attempt to explain how or why the results of Dr. Bernabe's objective testing and observations should be discounted "based on alleged malpractice in unrelated, unnamed, and undescribed cases").

Defendant notes Dr. Bernabe's findings, and generally cites to cases holding that an examining physician's opinion alone constitutes substantial evidence because it rests on an independent examination, a consultative examiner need not review all of the medical records because his examination is itself substantial evidence, and the opinions of the reviewing physicians can amount to substantial evidence, so long as other evidence in the record (such as Dr. Bernabe's opinion herein), supports those findings. [Id. at 12 (citations omitted).]

In this case, Dr. Bernabe examined plaintiff on one occasion, and it appears that the only medical records he had the benefit of reviewing included a December 2014 cervical spine MRI, and May 27, 2014, and June 2, 2014, progress reports (dated less than a week apart) each reflecting "a diagnosis of low back pain and sciatica." [AR at 276 (citing id. at 261, 271, 274).] There is no evidence that Dr. Bernabe reviewed any of plaintiff's workers' compensation records. The agency reviewers on initial review and on reconsideration also reviewed plaintiff's December 2014 cervical spine MRI, and the reports of Dr. Bernabe and the consultative psychiatrist, but there is no indication that they had any of plaintiff's workers' compensation records for review. [See id. at 74-84, 86-97.]

As defendant notes, when a treating physician's opinion is not given controlling weight, the ALJ must consider certain factors enumerated in 20 C.F.R. § 404.1527(c). [JS at 13-14.] Those factors include such things as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, the specialization of the physician, and the amount of understanding of disability programs and their evidentiary requirements the acceptable medical source has. [Id. at 14]; see also Trevizo v. Berryhill, 871 F.3d 664, 676 (9th Cir. 2017); 20 C.F.R. § 404.1527(c)(2)-(6). In this case, while the ALJ arguably considered it to be significant that Dr. Bernabe and the agency reviewers had more understanding of disability programs and requirements than plaintiff's workers' compensation physicians (see discussion below relating to the ALJ's failure to properly consider the opinions of plaintiff's workers' compensation providers), it does not appear that he considered any other relevant factor in giving the consulting sources controlling weight. If he had, he might have noted the long-term treating relationship between

plaintiff and Dr. Ahmed, Dr. Ahmed's specialization, and the fact that his opinions were supported by cervical and lumbar MRIs, numerous positive straight leg raise test results, numerous reports of significantly decreased range of motion ("ROM") of the lumbar and cervical spines, as well as of the shoulder, and a positive EMG/Nerve Conduction study reflecting mild to moderate bilateral carpal tunnel syndrome.

The Court also notes that despite finding significantly reduced ROM of plaintiff's lumbar spine [see AR at 279], Dr. Bernabe nevertheless determined plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk for 6 hours out of an 8-hour day, sit for 6 hours of an 8-hour day, push and pull with no restrictions, perform postural activities on a frequent basis, perform agility activities on a frequent basis, and had no manipulative limitations. [Id. at 281.] At least some of these findings appear to be inconsistent with plaintiff's reduced lumbar ROM as assessed by Dr. Bernabe, and those inconsistencies are not explained by either Dr. Bernabe or the ALJ.

Based on the foregoing, the ALJ did not provide specific and legitimate reasons supported by substantial evidence to give controlling weight to the opinions of Dr. Bernabe and the reviewing consultants.

### 3. Dr. Ahmed's Opinions

Plaintiff maintains that the ALJ's RFC determination for medium work is not consistent with any evidence except for the unsupported opinions of Dr. Bernabe and the state agency consultants who "simply parroted Dr. Bernabe's assessment." [JS at 6.] Additionally, despite plaintiff's diagnosis of carpal tunnel syndrome, plaintiff complains that the ALJ found him capable of frequently using his hands for gripping and grasping, as well as for fine fingering activities. [Id.] He notes that the ALJ never mentioned "the permanent and stationary findings and limitations set forth by [his] treating orthopedic surgeon, Dr. [Khalid B.] Ahmed . . . , who set forth specific related functional limitations affecting Plaintiff's use of his neck and lumbar spine," which are not "terms of art" or "temporary restrictions." [Id. (citing AR at 397).] Plaintiff contends that the medical evidence reflects that he has "consistently complained of pain affecting his low back and neck with

radiating symptoms of pain, and numbness into both his upper extremities and lower extremities." [Id. (citing AR at 261, 266, 270, 273, 314, 318, 336, 365, 381, 412, 416, 437, 441).] He further states that there is objective evidence in the form of MRIs of plaintiff's cervical and lumbar spines, which documented multi-level degenerative disc disease with neuroforaminal stenosis. [Id. at 6-7 (citing AR at 274-75, 290, 292-93, 300).] Plaintiff observes that he has had at least one positive straight leg raise test,[7] indicative of nerve root involvement, and at least one EMG/Nerve Conduction Study of his bilateral upper extremities, which revealed "bilateral carpal tunnel syndrome, mild to moderate." [Id. at 7 (citing AR at 316, 417).]

Plaintiff maintains that the opinions of his treating orthopedic surgeon for workers' compensation, Dr. Ahmed, were consistent with the Administrative Record and that Dr. Ahmed suggested specific limitations he believes apply to plaintiff, but that the ALJ ignored. [Id. at 7.] Plaintiff states that on August 29, 2014, shortly after plaintiff's alleged onset date, Dr. Ahmed

---

[7] The Court's review of the record, however, reflects that on *at least* 15 different occasions between May 2014 and December 2016, plaintiff's treating provider reported positive straight leg raising test results. [See, e.g., AR at 262 (May 27, 2014); 354 (Aug. 9, 2014); 316 (Sept. 11, 2014); 363 (Sept. 26, 2014); 365 (Nov. 7, 2014); 368 (Dec. 19, 2014); 322 (Dec. 24, 2014); 324 (Jan. 21, 2015); 371 (Jan. 30, 2015); 374 (Mar. 13, 2015); 381 (June 12, 2015); 392 (Oct. 16, 2015); 405 (Aug. 23, 2016, initial physical therapy assessment); 409 (Dec. 13, 2016, physical therapy discharge assessment); and 413 (Dec. 13, 2016, physician assessment, noting positive straight leg raising when supine).] On many of these same visits, as well as at other visits, plaintiff's assessed ROM of his cervical and/or lumbar spines was also found to be reduced, or abnormal findings were noted. [See, e.g., AR at 271 (June 2, 2014, noting abnormal examination findings at L4-S1 and recommending no lifting over 10 pounds, and no repetitive kneeling, crawling, climbing, or use of the back); 267 (June 4, 2014, finding normal ROM in the neck but abnormal examination findings at L1-L3 in the lumbar spine); 351-54 (Aug. 29, 2014, noting decreased ROM in the cervical, thoracic, and lumbar spines, as well as decreased shoulder ROM); 363 (Sept. 26, 2014, noting decreased ROM in lumbar spine); 318 (Oct. 31, 2014, decreased ROM in the lumbar and cervical spines); 365 (Nov. 7, 2014, noting decreased ROM in lumbar and cervical spines); 368 (Dec. 19, 2014, noting decreased ROM in lumbar spine); 322 (Dec. 24, 2014, noting lumbar ROM moderately restricted on all planes due to pain); 324 (Jan. 21, 2015, noting decreased lumbar ROM); 371 (Jan. 30, 2015, noting decreased ROM in cervical and lumbar spines); 374 (Mar. 13, 2015, noting decreased ROM in cervical and lumbar spines); 381 (June 12, 2015, noting decreased ROM in cervical, thoracic, and lumbar spines, and decreased shoulder ROM); 404 (Aug. 23, 2016, physical therapy initial evaluation noting decreased lumbar ROM); 389-92 (Oct. 16, 2015, noting decreased ROM in cervical and lumbar spines); 413 (May 25, 2016, noting cervical and lumbar ROM within 40% of normal); and 407 (Dec. 9, 2016, physical therapy discharge note reflecting decreased lumbar ROM). The Court should not have to search for and identify these relevant and probative records for the parties.

stated that plaintiff was capable of performing "modified duties to include no overhead work with right and left shoulder, no standing or walking over 45 minutes, no repeated bending or stooping, no sitting over 45 minutes, no repetitive kneeling, squatting or climbing and no repetitive neck motions." [Id. at 7-8 (citing AR at 360).] He also notes that in December 2015, Dr. Ahmed declared plaintiff to be "permanent and stationary" based on an October 16, 2015, evaluation. [Id. at 9; see also AR at 385-400.]

Specifically, after reviewing the medical records, including a July 11, 2014, MRI of plaintiff's lumbar spine, a December 22, 2014, MRI of plaintiff's cervical spine, and an October 29, 2014, neurological consultation report, and then conducting a thorough and extensive physical examination, Dr. Ahmed opined in his December 18, 2015, report that plaintiff had the impairments of "[h]erniated cervical disc (+) MRI, with radiculitis/radiculopathy"; "[h]erniated lumbar disc (+) MRI, with radiculitis/radiculopathy, right greater than left"; right shoulder strain/sprain rule out tendinitis impingement, cuff tear, internal derangement; left shoulder strain/sprain rule out tendinitis impingement, cuff tear, internal derangement; right knee strain/sprain rule out internal derangement; right foot strain/sprain; anxiety; and depression." [AR at 395.] Dr. Ahmed stated that plaintiff "injured his cervical spine, lumbar spine, bilateral shoulders, right knee and right foot due to his repetitive duties [as a cook] of constant heavy lifting, pulling, pushing, bending, stooping, standing and walking, on a continuous trauma basis from August 1, 2013 - May 26, 2014." [Id. at 396.] Among other things, with respect to plaintiff's cervical spine, Dr. Ahmed's evaluation reflected reduced ROM; decreased lordosis; positive foramina compression test; and decreased sensation in the bilateral lateral aspect forearm and thumb, bilateral long finger, bilateral medial side of the forearm, and medial side of the left elbow and arm. [Id. at 389.] With respect to plaintiff's shoulders, Dr. Ahmed noted reduced ROM, and reduced muscle strength in the right arm. [Id. at 390.] With respect to plaintiff's wrists and hands, Dr. Ahmed noted positive Tinel's and Phalen's on the right side, abnormal two-point discrimination of the right median nerve distribution, and abnormal motor power and sensation of the right hand. [Id. at 391.] With respect to plaintiff's lumbar spine, he found reduced ROM on flexion and extension; positive Lasegue's on the right; positive straight leg raise on the right; tightness and spasm of the paraspinal

musculature; facet joint tenderness at L4 and L5 bilaterally; some weakness in the right foot and knee; and decreased ROM of the right foot/ankle. [Id. at 392-95.] With respect to his objective findings, Dr. Ahmed stated that "there is restricted lumbar mobility with muscle guarding and spasms with asymmetric loss of range of motion with the MRI scan confirming the presence of 2-mm disk bulge at L4-L5[] level[,] and 3-4mm posterior disk bulge at L5-S1 with annular tear," and clinical findings for radiculopathy. [Id. at 397.] He determined plaintiff had the following work restrictions and capacity:

> For the cervical spine[,] patient has a disability precluding repetitive motions of the neck or spine. Contemplates the individual has lost approximately 50% of preinjury capacity flexing, extending, bending, and rotating neck or spine.
>
> For the lumbar spine the individual can do work approximately 50% of the time in a sitting position, and approximately 50% of the time in standing or walking position, with minimum demands for physical effort weather [sic] standing, walking or sitting.

[Id.]

The ALJ did not specifically discuss Dr. Ahmed's opinions. With respect to the opinions of plaintiff's workers' compensation providers generally, the ALJ stated the following:

> The undersigned assigns little weight to the various opinions contained in [plaintiff's] medical records as to [his] ability to return to work in 2014 and 2016, and temporary disability status with various specified restricted work duties while seeking treatment for his work injury. A finding of disability is an ultimate issue that is reserved to the Commissioner. Because the issue is reserved, and because workers' compensation cases utilize standards very different from Social Security, these opinions cannot be afforded controlling weight, but were nevertheless duly considered . . . . These opinions are given little weight as they are inconsistent with the opinions of the consultative examiner and DDS consultants, and are not supported by the medical evidence showing conservative treatment of impairments limited to prescription medication. As indicated above, [plaintiff's] severe physical impairments resulted in reduced abilities following the alleged onset date, which are reflected in the assigned residual functional capacity.

[Id. at 29 (citing id. at 304-400).]

/

/

### a. Inconsistency With Dr. Bernabe's Opinion

The Court finds that the only opinions the ALJ specifically noted as being inconsistent with the workers' compensation opinions in the record were the opinions of Dr. Bernabe -- who, as discussed above, evaluated plaintiff on one occasion in 2015 and who reviewed only two 2014 medical reports and a 2014 cervical MRI report -- and of the reviewing DDS consultants, who, as plaintiff correctly describes it, simply "parroted" Dr. Ahmed's findings. [Id. at 29.] In fact, although it appears that the agency reviewers on initial review and on reconsideration also reviewed plaintiff's December 2014 cervical spine MRI, and the reports of Dr. Bernabe and the consultative psychiatrist, there is no indication that they had any of plaintiff's workers' compensation records for review. [See id. at 74-84, 86-97.]

This was not a specific and legitimate reason to reject the opinions of Dr. Ahmed, an orthopedic surgeon who treated plaintiff over the period of several years and whose opinion was supported by objective clinical findings.

### b. Rejection of Workers' Compensation Opinions

An ALJ "may not disregard a . . . medical opinion simply because it was initially elicited in a state workers' compensation proceeding . . . ." Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002). Instead, an ALJ must evaluate the medical records prepared in the context of workers' compensation in the same way he would evaluate records obtained otherwise. Id. (citing Coria v. Heckler, 750 F.2d 245, 248 (3d Cir. 1984)) ("[T]he ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the workers' compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim"). Further, an ALJ is not entitled to reject a medical opinion based "on the purpose for which medical reports are obtained." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1200 n.5 (9th Cir. 2004) (citing Lester, 81 F.3d at 830).

Plaintiff argues that the ALJ failed to provide "any logical or legally supported rationale supporting his decision to reject [Dr. Ahmed's] specific work function limitations," and rejected them "simply because these limitations were set forth as part of Plaintiff's worker's compensation

case." [JS at 9 (citing AR at 25, 397).] He argues that a "simple common sense interpretation of Dr. Ahmed's limitations . . . would clearly preclude the ALJ's residual functional capacity assessment which contemplates that [plaintiff] is capable of 'frequent balancing, stooping, kneeling, crouching, crawling, climbing of ramps and stairs, handling, and fingering.'" [Id. (citing AR at 25).] Plaintiff further explains that Dr. Ahmed's limitation to performing certain activities 50% of a work day is inconsistent with the ALJ's finding that plaintiff can engage in "frequent balancing, stooping, kneeling, crouching, crawling, climbing of ramps and stairs, handling and fingering," because "frequent" in the Social Security context contemplates the ability to perform an activity two-thirds of the work day. [Id. (citing AR at 25).] Thus, Dr. Ahmed's statements that plaintiff can work approximately 50% of the time in a sitting position, and approximately 50% of the time in a standing or walking position, is "similarly at odds with the ALJ's [RFC] assessment that plaintiff is capable of standing and walking in virtually an unlimited manner," with no RFC limitations whatsoever. [Id. at 10.]

Defendant concedes that the ALJ's findings were "not flawless," and were a "bit inarticulate," but argues that the ALJ still provided specific and legitimate reasons for how he evaluated the medical opinions of record. [Id. at 14, 15 (citations omitted).] Defendant submits that the ALJ did not disregard the workers' compensation opinions solely because they were generated as part of a workers' compensation matter, but instead found that the workers' compensation opinions were inconsistent with other opinions in the record. [Id. at 13 (citing AR at 29).]

The Court disagrees with plaintiff's argument that "common sense" suggests that Dr. Ahmed's finding that plaintiff has lost approximately 50% of his pre-injury capacity to flex, extend, bend, and rotate his *cervical* neck or spine, is related to his ability to engage in balancing, stooping, kneeling, crouching, crawling, or climbing ramps and stairs, which logically appear to involve the lower extremities, and not the cervical neck or spine. However, Dr. Ahmed's August 2014 statements precluding plaintiff from overhead work with his bilateral upper extremities arguably relate to plaintiff's cervical spine limitations, and the ALJ completely failed to include any such limitation in his RFC, or even to mention those assessed limitations, even though such

14

limitations were arguably in "effect" from plaintiff's alleged onset date, up until at least Dr. Ahmed's October 2015 report. [AR at 360.] Likewise, the ALJ ignored Dr. Ahmed's sitting and standing/walking limitations, and failed to mention those limitations, or to include any sitting or standing/walking limitations in plaintiff's RFC for medium work. Indeed, plaintiff's past relevant medium-level work as a cook requires standing/walking and/or sitting requirements in excess of those required for light work.[8]

This was not a specific and legitimate reason supported by substantial evidence to reject Dr. Ahmed's opinions.

      **c.**    **Conservative Treatment**

The ALJ also stated that the opinions of plaintiff's workers' compensation providers, including Dr. Ahmed, were not supported by plaintiff's "conservative treatment . . . limited to prescription medications." [Id. at 29.]

"Conservative treatment" has been characterized by the Ninth Circuit as, for example, "treat[ment] with an *over-the-counter pain medication*" (see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (emphasis added); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that ALJ properly considered the plaintiff's use of "conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset")), or a physician's failure "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain." Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir.1999). Many courts have previously found that strong narcotic pain medications and spinal epidural injections are not considered to be "conservative" treatment. See, e.g., Yang v. Barnhart, 2006 WL 3694857, at *4 (C.D. Cal. Dec. 12, 2006) (ALJ's finding that

---

    [8] Light work "requires a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). The physical demand requirements for the occupation of cook are in excess of those for light work. Dictionary of Occupational Titles No. 313.361-014 (noting that the occupation of cook is medium-exertional level work and that the "[p]hysical demand requirements are in excess of those for Light Work").

claimant received conservative treatment was not supported by substantial evidence when claimant underwent physical therapy and epidural injections, and was treated with several pain medications); Aguilar v. Colvin, 2014 WL 3557308, at *8 (C.D. Cal. July 18, 2014) ("It would be difficult to fault Plaintiff for overly conservative treatment when he has been prescribed strong narcotic pain medications."); Christie v. Astrue, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (refusing to characterize treatment with narcotics, steroid injections, trigger point injections, and epidural injections as conservative).

In this case, plaintiff testified at the hearing that he was taking Tramadol -- a narcotic-like pain reliever used to treat moderate to severe pain (see https://www.drugs.com) -- two to three times a day, and a muscle relaxer once a day. [AR at 62-63.] In 2014, it appears that plaintiff may also have been prescribed and taken the narcotic pain reliever Norco, in addition to Tramadol and a muscle relaxer. [Id. at 306, 359-60.] The record also reflects that authorization was sought for both cervical and lumbar epidural injections, and plaintiff may have received those injections. [See, e.g., id. at 372 (requesting authorization for cervical and lumbar epidural steroid injections).] Plaintiff also was issued a TENS unit, a lumbar support brace, wrist braces for his carpal tunnel syndrome, and received authorization for physical therapy and chiropractic sessions. [See, e.g., id. at 362, 373, 398.]

Even if plaintiff's treatment is considered to be "conservative" -- which the Court does not determine -- the ALJ points to no evidence in the record that any treatment other than the treatment plaintiff was receiving or had been recommended to receive -- i.e., prescription pain medication, physical therapy, electrical stimulation, chiropractic treatment, and epidural injections -- is a standard method for treating individuals with plaintiff's impairments and the type of pain caused by plaintiff's physical impairments.

Accordingly, this was not a specific and legitimate reason supported by substantial evidence for discounting the opinions of Dr. Ahmed.

### d. "High" Activities of Daily Living

To the extent the ALJ rejected the opinions of Dr. Ahmed or plaintiff's other workers'

compensation physicians because plaintiff's testimony indicated "high activities of daily living such as driving, caring for animals, watering plants, tending to personal care tasks, and attending appointments," this was not a specific and legitimate reason supported by substantial evidence to discount those opinions.

An ALJ may reject a medical opinion because the claimant's activities of daily life contradict it, but only if substantial evidence supports that conclusion. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (finding that inconsistency between doctor's opinion and claimant's "maintaining a household and raising two young children, with no significant assistance from her ex husband" supported discounting the doctor's opinion). The record must provide details about the nature, extent, and frequency of the activities for them to "constitute 'substantial evidence' inconsistent with [an examining physician's] informed opinion." Trevizo, 871 F.3d at 666.

Here, although the ALJ specifically identified a few of the daily activities engaged in by plaintiff and found that plaintiff's testimony supported the RFC determination [AR at 26, 29], the amount of involvement plaintiff described in those activities was minimal, and cannot be called "high." For instance, plaintiff testified that he "can't drive too long" and drives no more than five minutes from his house to the store, but his wife handles the grocery basket; he goes out and "tr[ies] to water the plants," he "look[s] in" on the chickens his family keeps to be sure they have water or food, and sometimes he gives them their food and water; and he does not help with the housecleaning or the yard work. [Id. at 59-62.] Similarly, as reported by the psychiatric consultative examiner, plaintiff is "able to drive short distances and take care of his ADLs," but has a history of "poor self-care skills of dressing, bathing, eating, toileting, and safety precautions," he does "light cooking only," he does not manage his own money, and he does not "go to places by himself." [Id. at 284-85.] Accordingly, to the extent the ALJ determined that plaintiff's testimony regarding the limiting effects of his symptoms was consistent with the RFC and, therefore, inconsistent with Dr. Ahmed's or other workers' compensation provider's opinions, this reason was not supported by substantial evidence.

Based on the foregoing, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence to give "little weight" to the opinions of Dr. Ahmed and other workers'

compensation opinions.

Remand is warranted on this issue.

**B.     SUBJECTIVE SYMPTOM TESTIMONY**

Plaintiff argues that none of the reasons provided by the ALJ for discounting his subjective symptom testimony is clear and convincing, and defendant counters those arguments. For the same reasons discussed above with respect to the ALJ's consideration of plaintiff's activities, to the extent the ALJ failed to take into consideration plaintiff's description of the limiting effects of his symptoms on performing these activities, the ALJ failed to provide clear and convincing reasons, supported by substantial evidence to discount that testimony.

Because the matter is being remanded for reconsideration of the medical opinions, and the ALJ on remand as a result must reconsider plaintiff's RFC in light of the record evidence, the ALJ must also reconsider on remand, pursuant to SSR 16-3p,[9] plaintiff's subjective symptom testimony and, based on his reconsideration of plaintiff's RFC, provide specific, clear and convincing reasons for discounting plaintiff's subjective symptom testimony, if warranted. See Trevizo, 871 F.3d at 678 n.5; Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted) (the "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'"); Brown-Hunter v. Colvin, 806 F.3d 487, 493-94 (9th Cir. 2015) (the ALJ must identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting his non-credibility determination).

/

/

/

---

[9] The Ninth Circuit in Trevizo noted that SSR 16-3p, which went into effect on March 28, 2016, "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d at 687 n.5 (citing SSR 16-3p). Thus, SSR 16-3p shall apply on remand.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for discounting the opinions of Dr. Ahmed and plaintiff's other workers' compensation providers, the ALJ on remand shall reassess the medical opinions of record, including the opinions of Dr. Ahmed. The ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects. Second, because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit his testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Finally, based on his reevaluation of the medical evidence and of plaintiff's subjective symptom testimony, the ALJ shall reassess plaintiff's RFC and determine at step four, with the assistance of a VE if necessary, whether plaintiff is capable of performing his past relevant work as a cook. If plaintiff is not so capable, or if the ALJ determines to make an alternative finding at step five, then the ALJ shall proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national

economy that plaintiff can still perform.  See Shaibi v. Berryhill, 870 F.3d 874, 882-83 (9th Cir. 2017).

**VII.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  November 14, 2019

_/s/ Paul L. Abrams_
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE